IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RANDY REDICK a/k/a/ )
RANDREW REDICK, )
         )
        Plaintiff, )
         )
        v. )        Civ. Action No. 11-1260-GMS-CJB
         )
E MORTGAGE MANAGEMENT, LLC, )
         )
        Defendant. )

## REPORT AND RECOMMENDATION

In this action filed pursuant to the Delaware Wage Payment and Collection Act, Del.

Code tit. 19, § 1101, *et seq.* ("Delaware Wage Act" or "Act"), Plaintiff Randy Redick

("Plaintiff") seeks recovery of alleged unpaid wages, liquidated damages, and attorney's fees and

costs from Defendant E Mortgage Management, LLC ("Defendant"). Presently before the Court

are two pending motions: (1) Defendant's motion to dismiss all claims, filed pursuant to Fed. R.

Civ. P. 12(b)(6) (the "motion to dismiss") (D.I. 5); and (2) Defendant's motion to amend the

motion to dismiss, filed pursuant to Fed. R. Civ. P. 15(a)(2) (the "motion to amend") (D.I. 10).

For the reasons that follow, I recommend that the motion to dismiss be DENIED and that the

motion to amend be DENIED.

I.    **BACKGROUND**

    A.    **Factual Background**

Plaintiff, a Delaware resident, was employed by Defendant from 2009 until his

termination in October 2010. (D.I. 1, ex. A (hereinafter "Complaint") at ¶¶ 5, 9; D.I. 6 at 3)

Defendant is a New Jersey limited liability company that oversees its multi-state operations from

New Jersey and has its corporate headquarters in New Jersey. (Complaint at ¶ 2; D.I. 5 at 5)

Plaintiff worked exclusively in Delaware while employed by Defendant, first as a loan officer and then as a co-manager at Defendant's branch office located in Wilmington, Delaware. (Complaint at ¶¶ 3, 5; D.I. 5 at 5; *id.*, ex. A at 1; D.I. 6 at 3)

Plaintiff was promoted to the co-manager position in July of 2010, at which time his compensation arrangement changed (the details of which are irrelevant for purposes of resolution of these motions). (Complaint at ¶¶ 5–6) Upon Plaintiff's promotion to the co-manager position, the parties entered into a written employment agreement (the "Agreement"). (*Id.* at ¶ 8; D.I. 5, ex. A)

On October 15, 2010, Defendant advised Plaintiff that he would be terminated, effective October 19, 2010. (Complaint at ¶ 9) Plaintiff contends that, according to the Agreement, his wage payments were due on the last day of the month, making his final wage payment due October 31, 2010. (*Id.* at ¶ 10) Defendant made a partial payment of $28,475 to Plaintiff on November 19, 2010, as well as a payment of $25,000 on March 31, 2011. (*Id.* at ¶ 13) Plaintiff alleges that Defendant owes him an outstanding balance of $66,498.23, in addition to one half of revenues from closed and funded loans occurring between October 20, 2010 and February 19, 2011. (*Id.* at ¶¶ 13–14)

### B.    Plaintiff's Complaint

On October 27, 2011, Plaintiff filed a five-count Complaint against Defendant in the Superior Court of Delaware. (*See* Complaint) Plaintiff asserts (1) violations of Sections 1101 and 1103 of the Delaware Wage Act by Defendant for failure to pay certain wages due on or by October 31, 2010; (2) entitlement to wages from loans closed and funded from October 19, 2010 through February 19, 2011; (3) entitlement to liquidated damages pursuant to Section 1103(b) of

2

the Act for the unpaid wages; and (4) entitlement to an award of reasonable attorney's fees and costs pursuant to the Act's Section 1113(c).  (*Id.* at ¶¶ 15–25)  On December 19, 2011, Defendant removed the case from the Superior Court of Delaware to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446(a).  (D.I. 1)

### C.   Defendant's Motion to Dismiss and Motion to Amend

In lieu of filing an Answer to Plaintiff's Complaint, on January 26, 2012, Defendant filed the motion to dismiss.  (D.I. 5)  Briefing on that motion was complete on April 5, 2012.  (D.I. 7)  In the motion to dismiss, Defendant asserts that the parties' Agreement contains a choice of law provision requiring any cause of action for wages due under the Agreement to be brought pursuant to the laws of New Jersey.  (D.I. 5 at 6)  Accordingly, Defendant argues, Plaintiff's Complaint does not set forth any cause of action upon which relief may be granted, since all claims are asserted under Delaware law, and therefore the Complaint must be dismissed.  (*Id.* at 6, 8)

In response, Plaintiff argues that the choice of law provision is invalid here because the Delaware Wage Act, on which Plaintiff's claims are based, provides, in pertinent part, that "no provision of [the Act] . . . can be contravened or set aside by private agreement."  (D.I. 6 at 3 (citing Del. Code tit. 19, § 1110))  Furthermore, Plaintiff contends that enforcement of the choice of law provision would likely leave him without a remedy, as it is not clear that the New Jersey law that would otherwise govern such a dispute, the New Jersey Wage Payment Law ("New Jersey Wage Law" or "Law"), applies to employees who work outside of New Jersey.  (*Id.* at 5–6)  Plaintiff also asserts that the New Jersey Wage Law lacks "significant protections" to which he would be entitled under the Delaware Wage Act.  (*Id.* at 4–6)  Finally, Plaintiff requests

3

leave to amend his Complaint in the event that the Court grants Defendant's motion to dismiss. (*Id.* at 6)

On May 1, 2012, this matter was referred by me by Chief Judge Gregory M. Sleet to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (D.I. 8) On December 12, 2012, Defendant filed the motion to amend, requesting leave to include in its motion to dismiss an additional argument relating to a complaint that Plaintiff recently filed against Defendant in New Jersey state court. (D.I. 10) To date, Plaintiff has not responded to the motion to amend.

## II.    STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1950 (2009)). Thus, although a non-fraud claim need not be pled with particularity or specificity, that claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Determining whether a claim is plausible is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009). A plausible claim does more than merely allege entitlement to relief; it

must also demonstrate the basis for that "entitlement with its facts." *Fowler*, 578 F.3d at 211

(citations omitted). Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). In assessing the plausibility of a claim, the court must "'construe

the complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at

210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).[1]

## III.  DISCUSSION

### A.  Defendant's Motion to Dismiss

---

[1]     Courts faced with a motion to dismiss must generally limit their consideration
solely to "the allegations contained in the complaint, exhibits attached to the complaint and
matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F. 2d
1192, 1196 (3d Cir. 1993); *Pragmatus AV, LLC v. TangoMe, Inc.*, Civil Action No. 11-1092-
LPS, 2013 WL 571798, at *2 n.2 (D. Del. Feb. 13, 2013). However, courts may also consider
"undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to
dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar.
Corp.*, 998 F.2d at 1196; *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir.
2002) ("Although a district court may not consider matters extraneous to the pleadings, a
document integral to or explicitly relied upon in the complaint may be considered without
converting the motion to dismiss into one for summary judgment.") (internal quotation marks,
citations and emphases omitted). In this case, while the Agreement was not attached as an
exhibit to Plaintiff's Complaint, it was referenced throughout the Complaint and is therefore an
"integral" document to this action. (*See* Complaint at ¶¶ 8–10, 14) The Agreement is also
attached as an exhibit to the motion to dismiss. (D.I. 5 at ex. A) Accordingly, the Court will
consider the Agreement, and the choice of law provision therein, for the purposes of deciding
Defendant's motion to dismiss.

This action presents a choice of law dispute, as resolution of Defendant's motion to dismiss turns on whether the choice of law provision in the Agreement precludes Plaintiff from making a claim based on the Delaware Wage Act. *See Organ v. Byron*, 435 F. Supp. 2d 388, 390 (D. Del. 2006) (applying choice of law rules to determine whether Delaware choice of law provision precluded plaintiff from making claim based on Illinois securities statute). The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *Pac. Emp'rs Ins. Co. v. Global Reins. Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *Collins & Aikman Corp. v. Stockman*, Civ. No. 07-265-SLR-LPS, 2010 WL 184074, at *4 (D. Del. Jan. 19, 2010) (citing *Klaxon*).

Generally, Delaware courts will honor a choice of law provision in a contract, as long as "'the jurisdiction selected bears some material relationship to the transaction.'" *Organ*, 435 F. Supp. 2d at 390 (quoting *Annan v. Wilmington Trust Co.*, 559 A.2d 1289, 1293 (Del. 1989)); *J.S. Alberici Constr. Co. v. Mid-West Conveyor Co.*, 750 A.2d 518, 521 (Del. 2000) (emphasizing Delaware's "strong policy in favor of enforcing another state's laws" when faced with a choice of law provision). However, a court may find a choice of law provision to be "'unreasonable,'" and thus unenforceable, if "'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision.'" *Organ*, 435 F. Supp. 2d at 392 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Thus, Delaware courts would refuse to apply the law of a foreign jurisdiction if doing so would lead to a result that is clearly repugnant to the settled public policy of Delaware. *J.S. Alberici*, 750 A.2d at 520; *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 45 (Del. 1991).

6

Here, Plaintiff does not argue, and the Court would not find, that New Jersey does not bear a material relationship to the transaction, as Defendant is a New Jersey company with its corporate headquarters in New Jersey. (D.I. 5 at 5); *see also S. Megga Telecommc'ns Ltd. v. Lucent Techs., Inc.*, No. 96-357-SLR, 1997 WL 86413, at *4 n.11 (D. Del. Feb. 14, 1997) (finding a material relationship between the chosen jurisdiction of the choice of law provision, New Jersey, and the transaction, where one party to the contract was headquartered in New Jersey); *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1148 (Del. Ch. 2006) (finding a material relationship between the chosen jurisdiction of the choice of law provision, Texas, and the transaction, where one party to the contract operated out of Texas). Rather, Plaintiff contends, in effect, that enforcement of the choice of law provision would leave him with no remedy to recover wages—a result that would be repugnant to strong Delaware public policy, thus rendering the provision unenforceable. For the reasons set forth below, the Court agrees with Plaintiff.

1. **A Choice of Law Provision Shall Not Be Enforced if Enforcement Would Leave Plaintiff With No Remedy in a Matter Representing the Strong Public Policy of Delaware**

    a. **The Provisions of the Delaware Wage Act Represent the Strong Public Policy of Delaware**

First, the Court must determine whether the protections afforded by the Delaware Wage Act represent the strong public policy of Delaware; if not, the inquiry ends here, and the choice of law provision is enforceable. Delaware courts have explained that "the [Delaware Wage Act] was enacted by the General Assembly to provide for payment of wages and to enforce their collection." *Rypac Packaging Mach. Inc. v. Coakley*, No. Civ. A. 16069, 2000 WL 567895, at

*13 (Del. Ch. May 1, 2000) (citing *State ex rel. Christopher v. Planet Ins. Co.*, 321 A.2d 128,

133 (Del. Super. Ct. 1974)). Section 1103 of the Act requires that when an employee is fired,

resigns or otherwise leaves the employ of an employer, the wages earned by the employee

become due on the next regularly scheduled payday; if the employer fails to pay those wages, the

law provides for liquidated damages. Del. Code tit. 19, § 1103; *see also Dept. of Labor ex rel.

Commons v. Green Giant Co.*, 394 A.2d 753, 754–55 (Del. Super. Ct. 1978). Section 1113

provides a private right of action to employees for violations of the Act and awards attorney's

fees and costs to a prevailing plaintiff in such an action. Del. Code tit. 19, § 1113.

As this Court noted in *Organ v. Byron*, 435 F. Supp. 2d 388 (D. Del. 2006), statements

that a particular law reflects the strong public policy of the forum state may come from "statute

or judicial decision." 435 F. Supp. 2d at 392 (internal quotation marks and citation omitted).

There do not appear to be any Delaware state court cases that squarely address the question of

whether the Delaware Wage Act represents a strong and fundamental public policy of Delaware.

Indeed, more broadly, Delaware state courts have not had frequent occasion to address such

public policy arguments in the context of an analysis of choice of law provisions.

There is, however, a leading case from the Delaware Supreme Court, *J.S. Alberici Constr.

Co. v. Mid-West Conveyor Co.*, 750 A.2d 518 (Del. 2000), that does so. That case involved a

subcontractual agreement between a general contractor (Midwest Conveyor International, Inc., or

"Midwest") and a subcontractor (J.S. Alberici Construction Company, or "Alberici") working on

a refurbishment project at a Chrysler Corporation plant in Delaware. *Id.* at 519–520. The

agreement included both a Kansas choice of law provision and an indemnification provision that

would have operated to excuse the general contractor of liability for its own negligence (in

8

certain circumstances) that gave rise to damages or injuries. *Id.* at 519–520. After a worker

participating in the project was injured, he and his wife filed suit against Chrysler, Midwest and

Alberici. *Id.* at 519. Midwest filed a cross-claim against Alberici for contribution and/or

indemnification pursuant to the agreement, and Midwest and Alberici then filed cross-motions

for summary judgment. *Id.*

Alberici argued that Kansas law, under which the indemnification provision would be

enforceable, should not apply, because such application would be repugnant to the public policy

of Delaware. *Id.* at 519–20. Alberici relied on Del. Code tit. 6, § 2704(a), which stated that,

with respect to certain construction-related contracts, a "contractual provision requiring one party

to indemnify another party for the second party's own negligence . . . 'is against public policy

and is void and unenforceable.'" *Id.* at 520–21 (quoting Section 2704(a)). Although the statute

did not clearly set out the purpose behind this statement of policy, nor the evil it sought to

remedy, the *J.S. Alberici* Court found that the law did "contain[] an explicit statement of public

policy by the Delaware General Assembly that [was] difficult to ignore," and thus concluded that

it was "not free to disregard that declaration of policy." *Id.* at 521. Accordingly, it found that

"this statutory language compels the conclusion that enforcing Kansas law on this issue would be

clearly repugnant to the public policy of Delaware." *Id.* Therefore, the contractual provision was

unenforceable. *Id.*

While there is no similar express statement in the Delaware Wage Act, the Act does

include an "anti-waiver provision," which provides indication that the Act and its protections

amount to the strong public policy of Delaware. Section 1110 of the Act, titled "Provisions of

law may not be waived by agreement," states that "[e]xcept as provided in this chapter, no

9

provision of this chapter may in any way be contravened or set aside by private agreement." Del.

Code tit. 19, § 1110. Obviously, the Delaware General Assembly drafted this provision and

chose to include it in the Act, and the "ultimate arbiter of public policy in [Delaware] is the

General Assembly." *State v. Upshur*, ID No. 1003003410, 2011 WL 1465527, at *15 (Del.

Super. Ct. Apr. 13, 2011).

One Delaware Superior Court case, *Meli v. Rembrandt IP Mgmt., LLC*, C.A. No. 09C-09-

108 WCC, 2010 WL 2681853 (Del. Super. Ct. June 28, 2010), provides insight as to the effect of

Section 1110's anti-waiver provision, albeit in the context of a forum selection dispute. In *Meli*,

the plaintiff sued his former employer in Delaware state court, despite the presence of a

Pennsylvania forum selection clause in the parties' employment agreement, alleging violations of

the Delaware Whistleblowers' Protection Act and the Delaware Wage Act. *Id.* at *1. In

response to a motion to dismiss for improper venue, the plaintiff asserted that despite the forum

selection clause, Delaware was the correct venue for the suit due to the Delaware Wage Act's

anti-waiver provision. *Id.* at *1, *4. The *Meli* Court rejected this argument, noting that the Act's

provisions did not require that a plaintiff seek relief pursuant to the Act only in the Delaware

courts. *Id.* at *4 (citing Del. Code tit. 19, § 1113(a) ("A civil action to recover unpaid wages and

liquidated damages may be maintained in any court of competent jurisdiction.")). Moreover, the

*Meli* Court noted that the employment agreement at issue could not be said to offend Section

1110, because the agreement "does not mandate that the provisions of the Act are not applicable

to the employment relationship between the parties nor does it in any way prevent an

enforcement of the purpose of the statute." *Id.* at *4. This last statement suggests that Section

1110 means what it says—it precludes parties to an employment agreement from asserting that

10

the Act's provisions are inapplicable to those who might otherwise be able to claim its

protections or from contracting in a way that stifles the statute's objectives. Indeed, the Delaware

Supreme Court has similarly underscored that provisions of the Delaware Wage Act are "the

public policy of this State" and that Section 1110 requires that parties may not contravene those

provisions by private agreement, nor may an employer do so unilaterally. *See Turner v. Diamond

Shamrock Chems. Co.*, 1987 WL 17175, at *2 (Del. Sept. 14, 1987).

The language from these Delaware cases, which seem to demonstrate how the inclusion

of the anti-waiver provision in Section 1110 signals the importance of the Act's provisions to the

public policy of Delaware, is bolstered by precedent from our Court. This Court has found that

when a state statute contains an anti-waiver provision like the one in Section 1110, this is a

signal that the law in question amounts to a fundamental public policy of the state. In *Millett v.

Truelink, Inc.*, No. Civ. 05-599 SLR, 2006 WL 2583100 (D. Del. Sept. 7, 2006), the plaintiffs,

residents of Kansas, purchased credit-monitoring services from the defendant, a Delaware

corporation with its principal place of business in California. *Id.* at *1. Pursuant to the purchase,

the plaintiffs entered into a contract with the defendant that included a choice of law provision,

requiring the contract to be interpreted under Delaware law. *Id.* In accordance with that choice

of law provision, the plaintiffs later brought claims against the defendant for, *inter alia*,

violations of the Delaware Consumer Fraud Act ("DCFA"), alleging that the credit-monitoring

services failed to perform as promised. *Id.* However, the DCFA's statutory language limited that

Act's application to "unlawful practices that occurred or were performed partly or wholly within

the State of Delaware." *Id.* at *4 (citation omitted). Therefore, despite the choice of law

provision, the plaintiffs would not have been able to recover under the DCFA, since the alleged

11

unlawful practices were unconnected to Delaware. *Id.*

This Court found that such a result would offend Kansas public policy, that the choice of law provision was therefore unenforceable, and that the relevant Kansas consumer fraud law (the Kansas Consumer Protection Act, or "KCPA") would apply to the dispute rather than Delaware law. *Id.* The *Millett* Court observed that the defendant regularly included Delaware choice of law provisions in its agreements, in an attempt to "insulate itself from liability against all statutory consumer fraud claims, except perhaps those brought by Delaware residents." *Id.* This Court then noted that such a result would offend the public policy of Kansas. *Id.* As evidence of this, this Court cited to the existence of an anti-waiver provision in the KCPA, which stated that "'a consumer may not waive or agree to forego rights or benefits'" of that Act. *Id.* (quoting Kan. Stat. Ann. § 50-625).[2] In other words, the presence of an anti-waiver provision in the KCPA emphasized to this Court that the provision of the rights or benefits provided by the KCPA amounted to the important public policy of Kansas—important enough that the State had expressly mandated that those protections could not be waived.

---

[2]     Similarly, other courts have noted that the presence (or absence) of an anti-waiver provision in a state law can shed light on whether that law reflects the fundamental or important public policy of the state. *See, e.g., Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 468 (4th Cir. 2011) (holding that Maryland's Wage Payment and Collection Law did not reflect fundamental Maryland public policy because, *inter alia*, the law "contains no language indicating that . . . any provision of the [law] may not be waived by agreement"); *Stone St. Servs., Inc. v. Daniels*, No. Civ. A. 00-1904, 2000 WL 1909373, at *4 (E.D. Pa. Dec. 29, 2000) (noting that provision of the KCPA "states a fundamental policy of the state of Kansas, particularly in light of the explicit non-waiver provision contained in the law"); *Ashenden v. Lloyd's of London*, No. 96 C 852, 1996 WL 717464, at *3 (N.D. Ill. Dec. 9, 1996) (noting that anti-waiver provisions "strengthen[]" a state's public policy); *Melia v. Zenhire, Inc.*, 967 N.E.2d 580, 588 (Mass. 2012) ("Antiwaiver provisions are characteristic of laws that protect fundamental public policy."); *Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1323 (Cal. Ct. App. 2008) ("The relative significance of a particular policy or statutory scheme can be determined by considering whether parties may, by agreement, avoid the policy or statutory requirement.").

Similarly, here, the Court finds that the Delaware Wage Act's anti-waiver provision provides a clear indication that the Act's provisions represent the strong public policy of Delaware. The inquiry does not end here, however. Next, the Court must determine whether enforcement of the choice of law provision in the Agreement would *contravene* this strong public policy. *Organ*, 435 F. Supp. 2d at 392. If so, the provision is unreasonable, and thus unenforceable.

> **b.** **Leaving Plaintiff Without a Remedy in a Matter of Important Delaware Public Policy Would Contravene that Public Policy**

In analyzing the applicability of a choice of law provision, many courts (including this Court) have concluded that when enforcement of such a provision would leave a person without a remedy in a matter of important public policy, the provision is unenforceable. As noted above, the *Millett* Court concluded that a choice of law provision was unenforceable precisely for this reason—enforcement of the provision would have left the plaintiffs with no remedy concerning a matter of important public policy to the state of Kansas. The Delaware Superior Court has, citing to *Millett*, made similar statements. *See Marshall v. Priceline.com Inc.*, C.A. No. 05C-02-195 WCC, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006).[3] Our Court has also recognized

---

[3]    In *Marshall*, the plaintiffs, who resided in Ohio and Utah, filed a class action against the defendant, an online travel service that assists individuals in reserving hotel rooms across the nation, asserting claims under the DCFA. *Id.* at *1-2. In response, the defendant filed a motion to dismiss, asserting, *inter alia*, that the DCFA only regulates activity in Delaware, and that there were insufficient ties to Delaware to trigger the protections of the DCFA, since (1) the alleged violations took place outside of Delaware; (2) the plaintiffs did not reside in Delaware; and (3) the defendant's primary place of business and headquarters were located in Connecticut. *Id.* at *1. In dismissing the plaintiffs' claims brought under the DCFA for lack of standing, the *Marshall* Court found that no relevant conduct occurred in Delaware, and the fact that the defendant was incorporated in Delaware was not enough for the DCFA to apply. *Id.* at *2. The Court also noted that it would be unreasonable for citizens of Ohio and Utah to expect to be protected by Delaware law when the relevant activity did not occur in Delaware, and, conversely:

the converse of this conclusion, noting in *Organ* that if application of a Delaware choice of law

provision meant that plaintiff *would have recourse* under a Delaware statute that contained

provisions "essentially identical" to those of the Illinois statute that plaintiff argued should

otherwise be applicable, then utilization of the choice of law provision would not violate Illinois

public policy. 435 F. Supp. 2d at 393.

Unlike the situation in *Millett* and *Organ* (which considered whether resort to a Delaware

statute in light of a choice of law provision would contravene the strong public policy of *another*

*state*), here the question is whether resort to the laws of New Jersey would offend *Delaware's*

fundamental public policy interests. Yet the same principles apply. Taken together, the above

cases counsel that if the application of the Agreement's choice of law provision (requiring the

use of New Jersey's law) would effectively prohibit Plaintiff from raising the type of claims

provided for in the Delaware Wage Act, such a result would contravene the strong public policy

of Delaware.[4] The Court will thus now consider whether Plaintiff, a Delaware resident who

---

> [I]t would offend Ohio and Utah's public policy if this Court allowed a
> corporation with its princip[al] place of business in Connecticut to draft a
> contract which insulates itself from the consumer fraud acts of the states
> [in which] its consumers reside, since both Ohio and Utah have [] their
> own consumer fraud acts to provide protection to their citizens.

*Id.* (citing *Millett*, 2006 WL 2583100, at *4).

[4]     Other courts have similarly found that if enforcement of a choice of law provision
leaves a plaintiff with no remedy as to a matter that reflects the strong public policy of the
relevant state, the provision is unenforceable. *See, e.g., Van Slyke v. Capital One Bank*, 503 F.
Supp. 2d 1353, 1361 (N.D. Cal. 2007) (recognizing "California's strong public policy against
enforcing choice-of-law provisions that would abrogate the plaintiffs' right to pursue remedies");
*Olinick v. BMG Entm't*, 138 Cal. App. 4th 1286, 1305 (Cal. Ct. App. 2006) (holding that an
employer and employee "may validly select the substantive law of another jurisdiction, *provided*
the employee has an adequate remedy for his or her discrimination claim in the selected forum").

14

worked in a Delaware office location, would ultimately be barred from asserting a claim under

the New Jersey Wage Law (and thus be left without remedy should the choice of law provision

be enforced).

## 2. The New Jersey Wage Law Does Not Appear to Apply to Out-of-State Employees

The New Jersey Wage Law protects employees' rights to recover wages owed. *See New

Jersey Dep't of Labor v. Pepsi-Cola Co.*, 784 A.2d 64, 66 (N.J. 2001).[5] Like Section 1103 of the

Delaware Wage Act, the New Jersey Wage Law establishes a duty for the employer to pay all

wages due to a discharged employee, by no later than the regular payday for the pay period

during which the employee's discharge occurred. N.J. Stat. Ann. § 34:11-4.3. Unlike

Delaware's Wage Act, however, New Jersey's Wage Law does not give employees the right to

seek liquidated damages for unpaid wages, nor does it award attorney's fees and court costs. *See*

N.J. Stat. Ann. § 34:11-4.3; (D.I. 6 at 6).[6] The Court must determine whether the Law applies to

wage claims made by employees of New Jersey companies, like Plaintiff, who work outside of

New Jersey (i.e., in an out-of-state branch office).

---

[5]      Aside from Section 34:11-4.7, the New Jersey Wage Act does not explicitly provide for a private right of action. However, New Jersey courts have found an implied private right of action in the law that would permit employees to bring suit against employers for unpaid wages. *Teleki v. Talk Mktg. Enters., Inc.*, Docket No. C-0085-11, 2012 WL 2283044, at *5 (N.J. Super. Ct. App. Div. June 19, 2012); *Winslow v. Corp. Express, Inc.*, 834 A.2d 1037, 1043 (N.J. Super. Ct. App. Div. 2003); *Mulford v. Computer Leasing, Inc.*, 759 A.2d 887, 891 (N.J. Super. Ct. Law Div. 1999).

[6]      One argument that Plaintiff advances in support of non-enforcement of the choice of law provision is that the New Jersey Wage Law "does not provide the same extent of protection" as does the Delaware Wage Act, in the absence of these rights. (D.I. 6 at 6) However, as the Delaware Supreme Court has noted, "[a] mere difference between the laws of two states will not necessarily render" a choice of law provision unenforceable. *J.S. Alberici*, 750 A.2d at 520.

Plaintiff asserts that "it is arguable" that the New Jersey Wage Law does not apply to a Delaware employment situation, and that this result would leave him with no remedy to claim his earned wages if he cannot sue under Delaware's Wage Act. (D.I. 6 at 5–6) Defendant does not directly respond to this assertion, but implies that Plaintiff could indeed recover under the New Jersey Law. (*See* D.I. 7 at 10 ("Only under New Jersey law can the Plaintiff get relief."))

The Court starts with the plain language of the statute to interpret its reach. *See Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."); *see also Curlett v. Madison Indus. Servs. Team, Ltd.*, 863 F. Supp. 2d 357, 362–63 (D. Del. 2012) (looking first to plain language of Delaware state whistleblowers' statute to determine its scope). The plain language of the New Jersey Wage Law is not definitive as to its extraterritorial application. For example, the statute defines a regulated "[e]mployer" as "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, *employing any person in this State*." N.J. Stat. Ann. § 34:11-4.1(a) (emphasis added). Plaintiff contends that the New Jersey Wage Law arguably cannot apply to his employment situation, since an "[e]mployer" under the Law is "an employer employing *the* wage earner in the State of New Jersey," and here Plaintiff was not actually employed in New Jersey (but instead was employed in Delaware). (D.I. 6 at 5–6) However, the reference to "any person" in the statute's definition of "[e]mployer" could simply amount to a requirement that the employer employ "any person" in New Jersey—but not necessarily *the person* bringing the claim-at-issue. N.J. Stat. Ann. § 34:11-4.1(a). The definition of "[e]mployee" is likewise uninformative in this regard, as it provides no geographical

16

indicators. *Id.* at § 34:11-4.1(b).

Plaintiff also directs the Court to Sections 34:11-4.4 and 34:11-4-9(f) of the New Jersey

Wage Law as evidence of the Law's limited reach.  (D.I. 6 at 6)  Section 34:11-4.4 states, in part,

that "[n]o employer may withhold or divert any portion of an employee's wages unless:  (a) [t]he

employer is required or empowered to do so by New Jersey or United States law." N.J. Stat.

Ann. § 34:11-4.4.  According to Plaintiff, this provision helps demonstrate that the New Jersey

Wage Law "is intended to deal solely with workers employed in New Jersey" because it

"mandates that the only appropriate withholdings from wages are withholdings applicable under

New Jersey law" and "[h]ere, it is the withholding laws of the State of Delaware that would

apply."  (D.I. 6 at 6)  Subsection (f) of Section 34:11-4.9, which deals with "[a]dministration of

act; hearings; investigations; actions for penalties," states, in part, that:

> The commissioner or his designee is authorized to enter into a reciprocal
> agreement with the labor department or other corresponding agency of any
> other state or with a person or body authorized to act on behalf of that
> agency, for the collection of claims and judgments for wages,
> administrative fees or penalties based on claims *arising in each others'*
> *states.*

N.J. Stat. Ann. § 34:11-4.9(f) (emphasis added).  The "commissioner" referenced here is the

Commissioner of Labor, who is vested with enforcement powers for violations of the New Jersey

Wage Law. *Id.* at §§ 34:11-4.1(d), 34:11-56a23, 34:11-16; *see also Pepsi-Cola Co.*, 784 A.2d at

66.  According to Plaintiff, this provision demonstrates that New Jersey "recognizes, gives full

faith and credit, and would assist in collection efforts as to wage judgments determined in

another state where the employer is based in New Jersey."  (D.I. 6 at 6)  The Court agrees that

these provisions, particularly the latter provision, provide helpful clues suggesting that the reach

of the New Jersey Wage Law may be limited to New Jersey-based employees. However, those indications are not so clear that they should end the Court's inquiry.

The Court next looks to the jurisprudence of New Jersey's state courts. Although New Jersey courts have not explicitly held that the New Jersey Wage Law only protects employees who work in the state, some cases have suggested as much. One such indication came from the Superior Court of New Jersey, Appellate Division, in *Winslow v. Corp. Express, Inc.*, 834 A.2d 1037 (N.J. Super. Ct. App. Div. 2003). In *Winslow*, the defendant, a business with its regional headquarters in New Jersey, employed plaintiff as a sales representative in New Castle, Delaware. *Id.* at 1041. Following a change in the defendant's method of calculating the plaintiff's commissions, the plaintiff ended his employment and brought claims against the defendant, including one for violation of the New Jersey Wage Law. *Id.* The trial court had granted a motion to dismiss as to certain of plaintiff's claims, and later dismissed the remaining claims, including the New Jersey Wage Law claim, on a motion for summary judgment. *Id.*

The *Winslow* Court began its analysis of the plaintiff's New Jersey Wage Law claim by pointing out that:

> Because plaintiff's office was located in Delaware, there may be a question of whether the New Jersey Wage Payment Law governed his employment. *See* N.J.S.A. 34:11-4.1(a). However, neither party has briefed the issue. Moreover, the record does not indicate where plaintiff performed his services as a sales representative, which may be relevant to a determination of the applicability of New Jersey Law. In any event, even if the New Jersey Wage Payment Law were inapplicable, Delaware has a similar wage payment law [citing to the Delaware Wage Act].

*Id.* at 1042 n.2. Ultimately, however, the *Winslow* Court reversed the dismissal of certain claims, including plaintiff's Wage Law claim, on other grounds and said no more about this issue. *Id.* at

18

1042–43.[7]

Although New Jersey courts have not expressly stated that the New Jersey Wage Law cannot apply to the work of out-of-state employees, they have emphasized a separate, but related point—that the Law was intended to protect all individuals employed *within* the state of New Jersey, regardless of the employer's location. In *Mulford v. Computer Leasing, Inc.*, 759 A.2d 887, 891 (N.J. Super. Ct. Law Div. 1999), the Superior Court of New Jersey, Law Division, applied the New Jersey Wage Law to a plaintiff's claim to recover commissions from his former employer (a New York corporation that did business in New Jersey). The *Mulford* Court found that the New Jersey Wage Law applied because "the employees, such as [the plaintiff], are based in, and work out of New Jersey" and were also "residents" of New Jersey. *Id.* The *Mulford* Court found that these ties, along with the "strong public and statutory policy of [New Jersey] in favor of protecting payment of employees' duly earned compensation" dictated the application of New Jersey's law to the issue. *Id.* Legal commentators have thereafter construed the holding in *Mulford* to mean that the New Jersey Wage Law applies to "employees working in New Jersey" and that it is "*[t]he location of the employment*, not the location of the employer, [that] governs the employee wage payment law that applies." 18 Marvin M. Goldstein & Stanley L. Goodman, *New Jersey Practice Series: Employment Law* § 6.1 & n.2 (2d ed. 2011) (emphasis added).

Beyond these indications from New Jersey courts, the conclusions reached by other federal courts examining the New Jersey Wage Law are instructive. For example, in *Vengurlekar v. Silverline Techs, Ltd.*, 220 F.R.D. 222 (S.D.N.Y. 2003), the United States District

---

[7]    *See also Pepsi-Cola Co.*, 784 A.2d at 66 ("The broad language of the [New Jersey Wage and Hour Law] charges the Commissioner with recovering wages due to *New Jersey employees* . . . .") (emphasis added).

Court for the Southern District of New York considered a request for class certification made by two North Carolina-based employees of businesses that were incorporated in Delaware and headquartered in New Jersey. *Id.* at 225–26. The plaintiffs sought to bring a class action lawsuit alleging, *inter alia*, claims brought under several employment statutes, including the New Jersey Wage Law. *Id.* at 225. The plaintiffs argued that the typicality requirement for class certification of their New Jersey Wage Law claim was met because the Law applied to all of the defendants' former employees, even those who neither lived nor worked in New Jersey, because "the corporate defendants are all headquartered in New Jersey" and "New Jersey has a sufficient interest to extend its wage law beyond its borders." *Id.* at 230. The *Vengurlekar* Court expressed disagreement with these assumptions, finding it "far from clear that the [New Jersey Wage Law] applies to all of the wage claims of the proposed class members." *Id.* at 232.

In reaching this conclusion, the Court first examined *Mulford*, which it described as "[t]he only case specifically addressing the reach of the New Jersey statute." *Id.* at 230. In doing so, it found that the *Mulford* Court's conclusion "does not support an expansive interpretation of the statute." *Id.* at 230. The *Vengurlekar* Court did note that "New Jersey may also have an interest in policing those corporations headquartered within its borders and ensuring that such corporations compensate their employees, no matter where the employees live or work." *Id.* However, it also acknowledged that the legislative purpose of a statute like the New Jersey Wage Law is "most important" in determining its scope, and that the law's purpose was "primarily to protect *employees*." *Id.* (emphasis added) ("Employees are the obvious special beneficiaries of the [New Jersey Wage Law].") (citing *Mulford*, 759 A.2d at 891).

The *Vengurlekar* Court also examined other factors. For example, it looked to the

20

definitions of "employee" and "employer" in the New Jersey Wage Law, just as this Court has

done above, similarly concluding that "[t]he interplay of these two definitions fails to explain

where an employee must reside or work in order to invoke the New Jersey statute." *Id.* at 231

n.9. It also examined a line of federal and state cases interpreting Pennsylvania's Wage Payment

and Collection Law (a law similar to the New Jersey law), ultimately concluding that the

holdings in those cases did not alter its view that it was "far from clear" that the New Jersey

statute applied to all of the wage claims of the proposed class members. *Id.* at 231-32.[8]

---

[8]    In examining these cases, the *Vengurlekar* Court cited to a case from the United States District Court for the Eastern District of Pennsylvania, *Synesiou v. DesignToMarket, Inc.*, No. 01-5358, 2002 WL 501494 (E.D. Pa. Apr. 3, 2002). In that case, the *Synesiou* Court allowed a California resident to sue his employer (a Pennsylvania corporation) under the Pennsylvania Wage Payment and Collection Law ("WPCL"), where an employment agreement between the employee and employer contained a Pennsylvania choice of law provision mandating that any statutory claim for unpaid wages be brought under the WPCL. *Vengurlekar*, 220 F.R.D. at 232 (citing *Synesiou*, 2002 WL 501494, at *1-3). The *Synesiou* Court in turn had relied on the holding of a Pennsylvania state court case, *Crites v. Hoogovens Tech. Servs. Inc.*, 43 Pa. D & C.4th 449, 458 (Pa. Ct. Com. Pl. Jan. 7, 2000), which had ruled that an employee of a Pennsylvania corporation, who neither lived nor worked in the state, could maintain a WPCL claim where the applicable employment agreement required the use of Pennsylvania law, and where absent the ability to bring a claim under the WPCL, the plaintiff would have no statutory remedy for an unpaid wage claim. *Id.* at 232 & n.10 (citing *Synesiou*, 2002 WL 501494, at *2-3). Contrasting the facts of *Synesiou* with the facts before it, the *Vengurlekar* Court stated that "[t]here is no mention here of any employment agreement containing a New Jersey choice of law provision." *Id.* at 232 n.10. Thus, while the *Vengurlekar* Court did suggest that the presence of a New Jersey choice of law provision (like the one here) might have had some impact on its analysis, that suggestion was far from a conclusion that the New Jersey Wage Law could apply to a plaintiff's claims in such a situation. Moreover, unlike the circumstances in *Synesiou*, here there are no New Jersey state court opinions explicitly holding that an employee working outside of New Jersey could bring a claim under the New Jersey Wage Law if his employment was subject to a contract containing a choice of law provision mandating the applicability of New Jersey law. Indeed, as noted above, if anything, the New Jersey courts have suggested that employees working outside of New Jersey *cannot* utilize the New Jersey Wage Law's protections.

In *Goodman v. Port Auth. of N.Y. and N.J.*, 850 F. Supp. 2d 363, 383 (S.D.N.Y. 2012), a

Court in the Southern District of New York went further, citing *Mulford* in concluding that in

"order to avail himself of [the New Jersey Wage Law]," the plaintiff in that case "must have

worked in New Jersey." Because the plaintiff had pled sufficient facts to the effect that he had

worked in New Jersey, the *Goodman* Court denied a defendant's motion to dismiss plaintiff's

claim under the New Jersey Wage Act. *Id.*

In addition to the insight provided by these federal courts, the Court takes into account

the well-settled, general principle set out by New Jersey state courts that "New Jersey law does

not regulate conduct outside the state"; rather, "New Jersey law regulates conduct in New

Jersey." *D'Agostino v. Johnson & Johnson, Inc.*, 628 A.2d 305, 318 (N.J. 1993). In reliance

upon this principle, courts have limited the application of other New Jersey state employment

laws to employees working within New Jersey's borders. *See, e.g., Norenius v. Multaler, Inc.*,

2008 WL 4162878, at *6–7 (N.J. Super. Ct. App. Div. Sept. 11, 2008) (holding that New Jersey

Law Against Discrimination ("NJLAD") did not apply to plaintiffs who worked outside of New

Jersey); *see also Goodman*, 850 F. Supp. 2d at 383; *Hayden v. Hartford Life Ins. Co.*, Civil

Action 10-3424 (GEB), 2010 WL 5140015, at *4 (D.N.J. Dec. 9, 2010) (finding that pursuant to

New Jersey law, claims under the NJLAD and the New Jersey Conscientious Employee

Protection Act could be brought only by a plaintiff employed in New Jersey); *Peikin v. Kimmel &*

*Silverman, P.C.*, 576 F. Supp. 2d 654, 657 (D.N.J. 2008) (stating that the principle that "New

Jersey law regulates conduct in New Jersey, not outside the state" has "been applied repeatedly in

cases brought by New Jersey residents against out-of-state employers, with courts consistently

holding that the claim of a New Jersey resident for her allegedly wrongful dismissal from out-of-

state employment is governed by the law of the state in which she was employed") (internal

quotation marks and citations omitted) (citing cases).[9]

Taken together, the text of portions of the New Jersey Wage Law, the guidance provided

by New Jersey state courts, the opinions of legal commentators and the decisions of federal

courts interpreting the Law all tend to point in one direction—they suggest that the Law is only

applicable to those working within New Jersey's geographical boundaries. This conclusion

makes sense, given the well-settled principle that New Jersey employment law regulates conduct

that occurs within New Jersey—and not conduct occurring outside of the state's territorial

borders. In light of the guidance provided by these authorities, the Court is sufficiently

persuaded that Plaintiff would not ultimately be able to bring his wage claim pursuant to the

terms of the New Jersey Wage Law.

### 3.    Conclusion

---

[9]     It is also worth noting that other states, including Delaware, have interpreted their respective wage laws to extend only to regulation of employment within state borders. *See, e.g.*, *Priyanto v. M/S Amsterdam*, No. CV 07-3811 AHM (JTLx), 2009 WL 175739, at *7–8 (C.D. Cal. Jan. 23, 2009) (noting that "[c]ourts interpreting other states' wage laws have . . . focused on the situs of an employee's work in determining if a wage law applies, not where managerial decisions, actions, or inactions occur" and holding that California's wage laws did not apply to out-of-state employees); *Klig v. Deloitte LLP*, 36 A.3d 785, 797–98 (Del. Ch. 2011) (holding that plaintiff who did not work in Delaware could not assert a claim under the Delaware Wage Act because "Delaware can readily regulate within its borders, but cannot regulate the wages of an individual working in another state, outside of Delaware's jurisdiction"); *Panos v. Timco Engine Ctr., Inc.*, 677 S.E.2d 868, 873–74 (N.C. Ct. App. 2009) (refusing to apply North Carolina's Wage and Hour Act to a nonresident employee who worked primarily outside of North Carolina, despite a North Carolina choice of law provision in employment agreement, as "'[l]egislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction'") (quoting *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918)); *Hadfield v. A.W. Chesterton Co.*, No. 20084382, 2009 WL 3085921, at *3 (Mass. Super. Ct. Sept. 15, 2009) (finding that, despite a Massachusetts choice of law provision, an employee working in Africa was not protected by the Massachusetts Wage Act because "contractual choice of law provisions do not defeat the presumption against extraterritorial application of state wage statutes").

Application of the Agreement's choice of law provision, which would require the use of New Jersey's law, would require Plaintiff to bring his wage claim under the New Jersey Wage Law. Yet Plaintiff, who worked exclusively in Delaware, would likely be unable to exercise any rights under that New Jersey statute, and would therefore be left without any similar legal remedy for his claim. Such an outcome would be repugnant to the important public policy of the state of Delaware in allowing employees to recover unpaid wages, if such employees would otherwise be able to make out such claims under the Delaware Wage Act. Thus, the Court recommends that the choice of law provision not be enforced as to Plaintiff's claims, and that Defendant's motion to dismiss be DENIED.

### B.    Defendant's Motion to Amend

The Court also recommends that Defendant's motion to amend be denied. Defendant notes that subsequent to the filing of the instant case, Plaintiff has filed an action in New Jersey state court, seeking damages under the New Jersey Wage Law. (D.I. 10 at 5) Contending that the "New Jersey filing is completely inconsistent with what Mr. Red[]ick is arguing in this court," Defendant argues that the Court should grant it leave to amend its motion to dismiss, so as to assert that the filing of the New Jersey action "constitutes a waiver by Mr. Red[]ick of any argument that Delaware law applies to his claims." (*Id.*) Defendant brings this motion pursuant to Fed. R. Civ. P. 15(a)(2), which requires leave of Court to amend a *pleading*, and dictates that such leave should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); (D.I. 10 at 5).

Federal Rule of Civil Procedure 7(a) lists the documents that are considered "pleadings," which do not include a motion to dismiss. *See* Fed. R. Civ. P. 7(a). Therefore, Rule 15(a)(2)

24

does not apply here. *See Styles v. Triple Crown Publ'ns., LLC*, Civil No. WDQ-11-3759, 2012 WL 1964443, at *3 (D. Md. May 30, 2012) (finding that Rule 15(a) does not apply to amendments to motions to dismiss, because such motions are not pleadings).

More importantly, the grant of Defendant's motion to amend might implicate Fed. R. Civ. P. 12(d). Under this Rule, a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) must be treated as a motion for summary judgment if matters outside the pleadings are presented to the Court. Further, under Rule 12(d), "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Defendant's motion to amend the motion to dismiss appears to seek leave to include argument about how the filing of Plaintiff's New Jersey action (which was filed *after* the instant action), and legal positions Plaintiff takes in that action, amount to waiver of his claims in the instant case. Therefore, this motion could be construed as asking the Court to consider matters outside of the pleadings in the instant action, thus converting Defendant's motion to dismiss into an early motion for summary judgment. Fed. R. Civ. P. 12(d); *see also Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006) (noting that a court may not consider matters outside the pleadings when adjudicating a motion to dismiss).[10]

In light of this concern, and in light of the state of the record—which includes very little legal argument from Defendant as to the rationale behind the claim of alleged waiver, no legal

---

[10] Typically, in reviewing a Rule 12(b)(6) motion, a court may only take into account the *existence* of a prior judicial opinion or court filing, but may not consider the truth of the facts set out in those documents or make findings of fact based on those other proceedings, without converting the motion to dismiss into a motion for summary judgment. *See M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010); *In re Able Labs. Sec. Litig.*, Civil Action No. 05-2681 (JAG), 2008 WL 1967509, *17 n.21 (D.N.J. Mar. 24, 2008).

citation in support of that argument and no response at all from Plaintiff—the Court determines

that the better course is to deny the motion to amend.  This denial is without prejudice to

Defendant's ability to raise the impact of the New Jersey filing on this case in a later motion,

such as a motion for summary judgment, if applicable.  The Court offers no opinion at this time

on the outcome of such a motion.  Accordingly, the Court recommends that Defendant's motion

to amend be DENIED.

## IV.  CONCLUSION

For the foregoing reasons, I recommend that Defendant's motion to dismiss be DENIED;

and that its motion to amend be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1) and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss

of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-

79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order in Non-Pro Se Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  March 15, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

26